# In the United States Court of Federal Claims

No. 18-1116C
Filed: April 20, 2020

|  |  |
|---|---|
| **MARK R. FULLER,**<br><br>*Plaintiff,*<br><br>v.<br><br>**UNITED STATES,**<br><br>*Defendant.* | **Keywords:** Military discharge; summary judgment; RCFC 56; legal hold; mandatory retirement; drop from rolls; military control; Secretary of the Navy; *res judicata*; claim preclusion |

*Brian Schenk*, Midwest Military & Veterans Law, PLLC, Minneapolis, MN, for Plaintiff.

*Daniel Herzfeld*, Trial Attorney, *Douglas K. Mickle*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Joseph H. Hunt*, Assistant Attorney General, United States Department of Justice, Civil Division, Commercial Litigation Branch, Washington, D.C., with whom were *James McKeon*, Of Counsel, United States Department of the Navy, Office of the Judge Advocate General, for Defendant.

## MEMORANDUM OPINION AND ORDER

**TAPP, Judge.**

In this military pay action, Plaintiff, Mark Fuller, a former Major in the United States Marine Corps ("USMC") Reserves, was dropped from the rolls following his guilty plea and confinement for financial crimes stemming from a tour of service in Iraq in 2005. After unsuccessfully petitioning the Board for the Correction of Naval Records, Fuller filed suit in this Court on April 24, 2015. *See Fuller v. United States*, 127 Fed. Cl. 640 (2016). This Court eventually granted the United States' motion for judgment on the administrative record, thereby resolving the case in favor of the United States. *Id.* at 647. In August of 2016, Fuller again petitioned the BCNR, this time seeking reconsideration of its November 2013 decision. In May of 2018, the BCNR denied Fuller's request, concluding the Navy had properly separated Fuller and finding no error or material injustice. Now, Fuller returns to the Court of Federal Claims seeking review of the BCNR's denial of his request for reconsideration.

In his present Complaint, filed on July 31, 2018, Fuller alleges that the BCNR's May 2018 decision was arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, and contrary to law. He also argues, for the first time, that the Secretary of the Navy ("the Secretary"), rather than the Commandant of the USMC, had the exclusive authority to place Fuller's retirement on legal hold while the USMC investigated Fuller's misconduct. (Compl. at ¶¶ 23, 76–79, ECF No. 1). On August 1, 2019, the United States filed the Administrative Record (AR, ECF No. 17), and a Motion for Summary Judgment, or,

Alternatively, Judgment on the Administrative Record. (Def. Mot., ECF No. 19). On October 31, 2019, Fuller filed his Response and Cross-Motion for Judgment on the Administrative Record. (Pl. Mot., ECF No. 23). On January 24, 2020, the United States filed its Response and Reply. (Def. Resp., ECF No. 29). On March 9, 2020, Fuller filed his Reply. (Pl. Reply, ECF No. 24).

This matter is now fully briefed and ripe for decision. The United States' Motion for Summary Judgment is **GRANTED**; the United States' Motion for Judgment on the Administrative Record and Fuller's Cross-Motion for Judgment on the Administrative Record are **DENIED AS MOOT**.

## I.   Background

Fuller entered service in the USMC Reserves in 1992 after several years of active service in the U.S. Army. (AR536, 565, 567). Fuller transitioned to active duty in 1994 and was promoted to Major in 2002. (AR514, AR772). In 2003, Fuller was selected for a "very competitive" position with the VMFAT-401 "Snipers," a supersonic fighter squadron training unit based in Yuma, Arizona. (*See* AR683). Fuller was described as an "[e]xemplary Marine Officer," who was "highly talented" and possessed "good judgment" and "superb leadership" that made him a "force multiplier" within his unit. (AR666, 673, 677, 678). Fuller's Reviewing Officers consistently recommended him for promotion—one Colonel wished to "clone" him. (*See* AR648).

From February to September 2005, Fuller was deployed to Fallujah, Iraq. (AR387). While in Iraq, Fuller served as Team Leader for a Civil Affairs Group, where he was responsible for disbursing cash payments to Iraqi contractors for reconstruction work as part of the Commander's Emergency Response Program. (*See* AR8; AR386–87). During that time, Fuller mailed approximately 20 envelopes to his ex-wife in the United States, which she believed contained cash but was instructed not to open. (AR8, 386–391, 333). After he returned to the United States in October 2005, Fuller made approximately 91 cash deposits in various personal bank accounts, with each deposit totaling less than $10,000. (*See* AR8, 388–89). From October 2005 to April 2006, Fuller deposited over $440,000 in this manner. (AR8, 388). On January 9, 2006, Fuller cancelled a Navy Federal Credit Union deposit of $7,700 when Credit Union personnel notified him the deposit would trigger a currency transaction report. (AR388).

On January 24, 2009, Fuller requested voluntary retirement, to be effective August 1, 2009. (AR8). This request was modified to become effective July 1, and the modification was approved on May 19, 2009. (AR8, 403). However, on May 25, 2009, the Naval Criminal Investigative Service launched a criminal investigation into Fuller's conduct while deployed in Iraq. (AR8). Consequently, on June 5, 2009, Fuller's retirement was placed on "legal hold" while the investigation was pending, which froze all personnel actions related to Fuller. (*See* AR8, 37–38); *Fuller*, 127 Fed. Cl. at 642. On June 25, 2009, Fuller, through his defense counsel, requested he be released from the legal hold and permitted to retire on July 1, 2009. (AR8, 155–56). This request was denied on July 16, 2009 due to the ongoing investigation. (AR157–59). Fuller remained stationed in Arizona during the pendency of the investigation. *Fuller*, 127 Fed. Cl. at 642.

On May 11, 2010, the United States indicted Fuller in the District of Arizona for his conduct in Iraq. (AR162–67). In the 22-count indictment, the United States alleged Fuller violated 31 U.S.C. § 5324(a)(3) by structuring financial transactions to avoid the reporting requirements of 31 U.S.C. § 5313(a). (*Id.*). Fuller pled guilty to two counts on August 4, 2010 and on January 10, 2011, the court sentenced him to confinement for a period of 12 months and a day, followed by two years of supervised released, and fined him $198,710. (AR168–180). From February 4 to December 16, 2011, Fuller remained in confinement and was classified as "IHCA" or "in the hands of civilian authorities." (AR180–81, 182).

On June 22, 2011, the Commander of the USMC Central Command recommended that the Deputy Commandant for Manpower and Reserve Affairs drop Fuller from the rolls of the USMC Reserves, pursuant to 10 U.S.C. § 12684. (AR47–49).[1]

On November 28, 2011, Fuller was notified by the Assistant Deputy Commandant for Manpower and Reserve Affairs that the Commandant intended to recommend that the Secretary of the Navy drop Fuller from the rolls. (AR50–51). Fuller acknowledged receipt of this notice on December 6, 2011 and stated he had met with a Judge Advocate and intended to consult civilian counsel and submit a rebuttal of the recommendation to the Secretary. (AR 51, 401).

The Bureau of Prisons released Fuller from federal prison on December 16, 2011, to begin his two-year period of supervised release. (AR180–81). On January 4, 2012, Fuller submitted his rebuttal to the Commandant's recommendation letter, arguing "it was neither permissible nor lawful for Major Fuller to remain on legal hold" and that dropping him from the rolls and denying him retirement benefits would likewise be unlawful and unjust. (AR268–70, 109); *Fuller*, 127 Fed. Cl. at 643. On May 9, 2012, Fuller submitted a letter to the Secretary requesting approval of his voluntary retirement request that was previously approved before he was placed on legal hold in 2009. (AR271–72).

On May 11, 2012, the Deputy Commandant for Manpower and Reserve Affairs recommended the Assistant Secretary of the Navy for Manpower and Reserve Affairs ("Assistant Secretary" or "ASN (M&RA)") approve the recommendation to drop Fuller from the rolls. (AR59–62). The Deputy Commandant concurred with the June 12, 2011 recommendation from USMC Central Command that "dropping Major Fuller from the rolls is the most effective means to ensure that Major Fuller is held accountable for his misconduct and to ensure the severance of Major Fuller's eligibility for a military retirement." (AR62).

---

[1] Under § 12684, "[t]he President or the Secretary concerned may drop from the rolls of the armed force concerned any Reserve" . . . "who is sentenced to confinement in a Federal or State penitentiary or correctional institution after having been found guilty of an offense by [a civilian court] and whose sentence has become final." Dropping an officer from the rolls is a discretionary action if the conditions of the statute are met, and results in separation without a certificate of discharge. *See Fuller*, 127 Fed. Cl. at 643 (citing SECNAVINST 1920.6C at 6). When dropped from the rolls, an officer does not receive a characterization of service (*e.g.* honorable, dishonorable), is severed from all ties to his or her service branch and loses eligibility for retirement benefits. *Id*; (AR51).

On June 22, 2012, the Assistant Secretary approved this recommendation and Fuller was dropped from the rolls. (*Id*.). Fuller's request for voluntary retirement was denied on July 9, 2012, (AR58), and soon after, he was notified he would be discharged from the military effective August 13, 2012. (AR63–64).

On December 5, 2012, Fuller submitted a petition to the BCNR. (AR82). In his petition, Fuller requested: (1) the Secretary of the Navy's action dropping Fuller from the rolls be voided; (2) retirement at his current grade and time in service; (3) back pay from the date Fuller was dropped from the rolls to the date of correction of his records; (4) that he be issued a corrected Form DD214 reflecting separation due to retirement with an honorable characterization of service and removal of any misconduct separation code; (5) compensation for 36 days of unused leave forfeited by his drop from the rolls; (6) removal of all documents concerning Fuller's drop from the rolls; and (7) that he be provided all benefits accruing to a Marine retiring from active duty, including compensation for a move to his home of record. (AR137–38); *see Fuller*, 127 Fed. Cl. at 643. Among other allegations, Fuller asserted the action taken by the Commander of the USMC Forces Central Command placing Fuller on legal hold was erroneous, an abuse of discretion, and in violation of regulations because it was not based on an appropriate purpose. (AR127). Fuller argued that the Marine Corps was not "taking actions with a view towards court-martial" as required by the regulations to place him on legal hold because it was coordinating with the U.S. Attorney's Office in Phoenix, Arizona to bring criminal charges in federal court, rather than through the military justice system. (*Id*.). Thus, according to Fuller, the basis for the legal hold and abeyance of his retirement had ended, and the failure to remove such hold constituted an abuse of discretion. (AR128).

The Board requested an advisory opinion on Fuller's application from the Commandant of the USMC's Judge Advocate General ("JAG"). (AR139–43). The JAG opinion stated, "proper procedures were followed in dropping [Fuller] from the rolls" and "[t]he issues raised by [Fuller] are without merit and therefore his requests should be denied." (AR139, 143). The JAG specifically addressed whether placing Fuller on legal hold was proper and concluded that it was. (AR141). Fuller responded to this opinion in a letter dated May 17, 2013. (AR476–81). On November 21, 2013, after considering the entire record—including Fuller's petition, the JAG advisory opinion, and Fuller's rebuttal to that opinion—the Board determined "the evidence submitted was insufficient to establish the existence of probable material error or injustice" and "substantially concurred with the comments contained in the advisory opinion." (AR217–218).

On April 24, 2015, Fuller filed a Complaint in the Court of Federal Claims seeking "reinstatement of his retirement, deletion of negative entries from his record, and back pay." *Fuller*, 127 Fed. Cl. at 644. In a decision issued July 16, 2016, the court upheld the decision of the Board and granted the United States' motion for judgment on the administrative record. *Id*. at 647. The court concluded Fuller was not entitled to retirement at the time he was dropped from the rolls because, as a commissioned Marine Corps officer, his retirement was discretionary at the approval of the President and that approval was never given. *Id*. at 645. Further, the court determined that "the Marine Corps properly maintained [Fuller] on legal hold and held [Fuller's] retirement in abeyance through his incarceration and supervised released, which ended December 17, 2013." *Id*. at 646. Finally, the court found the Marine Corps acted reasonably

when it exercised its discretion to drop Fuller from the rolls rather than return him to military control for separation processing following his incarceration. *Id*. at 647.

On August 22, 2016, following the court's decision, Fuller, acting *pro se*, submitted an application for reconsideration to the Board, seeking the same relief as in his previous application. (AR22–77; 137–38; 35). In support, Fuller claimed he had "new and material evidence not previously considered by the Board." (AR24). Specifically, Fuller claimed that: (1) under Marine Corps Order P1900.16, only the Secretary of the Navy had the authority to hold his retirement in abeyance because he was approved for his mandatory retirement after completing 20 years of service and was twice non-selected for a promotion; (2) he should have been placed on the active retired list upon completion of 20 years of active service and two non-selections for promotion; and (3) he was entitled to mandatory retirement, thus the Secretary of the Navy acted erroneously by dropping Fuller from the rolls in contravention of SECNAVINST 1920.6C. (AR33–34).

The Board requested another JAG advisory opinion regarding Fuller's request for reconsideration, which the Marine Corps issued on December 4, 2017. (AR7–16). The JAG opinion concluded Fuller's "request for reconsideration should be considered. But because his allegations of error or injustice lack merit, his request for relief should be denied." (AR8). In evaluating whether the Board should hear Fuller's request for reconsideration, the JAG opinion noted that Fuller "submitted new evidence not previously considered by the Board[]" and "although superficially similar to those raised in his initial petition, [Fuller's] new claims of error or injustice are materially different." (AR11). The advisory opinion concluded that "the Board should consider [Fuller's] most recent petition." (*Id*.).

With respect to the merits of his request, the JAG opinion stated Fuller had "not satisfied his burden" to show the error or injustice necessary to overcome the presumption of regularity afforded to the BCNR. (AR11). In other words, the JAG opinion recommended the Board's initial denial should stand. (AR6). The BCNR concurred and adopted this opinion concluding that "[Fuller's] command and [the Assistant Secretary] acted within their authority to recommend, process, and approve the decision to drop [him] from the rolls. (AR5). The Board also "found that the pending investigation and allegations of misconduct against [Fuller] allowed for the Department of the Navy to approve the abeyance of [his] approved retirement date." (*Id*.). Fuller submitted responses on February 15 and February 19, 2018. (AR304–11, 292–93).

In a May 19, 2018 letter, the Board notified Fuller "the evidence submitted was insufficient to establish the existence of probable material error or injustice[]" and "[c]onsequently, your application has been denied." (AR1). As part of its review, the Board reviewed the record, the JAG advisory opinion, and Fuller's responses, noting "[Fuller's] present claims of error and injustice are superficially, and in part substantively, similar to the ones previously considered and denied by the Board." (AR1–4). The Board upheld its previous conclusions that Fuller's conduct in Iraq provided an appropriate basis for placing him on legal hold, authority to institute the hold was not limited exclusively to the Secretary of the Navy, and the Assistant Secretary acted within its statutory authority to "recommend, process, and approve the decision to drop [Fuller] from the rolls." (AR4–5).

Fuller now appeals this most recent decision from the Board, disputing the Secretary's authority to hold his retirement in abeyance.

## II.     Standard of Review

### A.  Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." RCFC 56(a). A "genuine dispute" exists where a reasonable factfinder "could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those which might significantly alter the outcome of the case; factual disputes which are not outcome-determinative will not preclude summary judgment. *Id*. In determining whether summary judgment is appropriate, the court should not weigh the credibility of the evidence, but simply "determine whether there is a genuine issue for trial." *Id*. at 249. In so deciding, the Court must draw all inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 578–88 (1986).

### B.  Judgment on the Administrative Record

Where, as here, the parties have filed cross-motions for judgment on the administrative record, RCFC 52.1 provides a procedure for parties to seek the equivalent of an expedited trial on a "paper record, allowing fact-finding by the trial court." *Bannum, Inc. v. United States*, 404 F.3d 1346, 1356 (Fed. Cir. 2005). Unlike summary judgment standards, genuine issues of material fact do not preclude a judgment on the administrative record. *See id.* at 1355–56. Questions of fact are resolved by reference to the administrative record. *Id.* at 1356.

In reviewing the determinations of a military corrections board, a plaintiff must demonstrate "by cogent and clearly convincing evidence," *Wronke v. Marsh*, 787 F.2d 1569, 1576 (Fed. Cir. 1986), that the military board's decision was "arbitrary, capricious, unsupported by substantial evidence, or contrary to law." *Metz v. United States*, 466 F.3d 991, 998 (Fed. Cir. 2006). It is well settled that "responsibility for determining who is fit or unfit to serve in the armed services is not a judicial province; and that courts cannot substitute their judgment for that of the military departments when reasonable minds could reach differing conclusions on the same evidence." *Heisig v. United States*, 719 F.2d 1153, 1156 (Fed. Cir. 1983) (citations omitted). Moreover, "military administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs." *Dodson v. United States*, 988 F.2d 1199, 1204 (Fed. Cir. 1993).

A court may set aside an agency's decision if the agency "entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or the decision is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Ala. Aircraft Indus., Inc. v. United States*, 586 F.3d 1372, 1375 (Fed. Cir. 2009) (quoting *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)). However, "[w]hen substantial evidence supports the board's action, and when that action is reasonable in light of all the evidence presented, the court

will not disturb the result." *Pope v. United States*, 16 Cl. Ct. 637, 641 (1989). The court's review "does not require a reweighing of the evidence, but a determination whether the conclusion being reviewed is supported by substantial evidence." *Heisig*, 719 F.2d at 1157.

### III. Discussion

Fuller alleges that the Secretary of the Navy had exclusive authority to place him on legal hold, pending investigation into his misconduct, and the BCNR's decision otherwise was arbitrary, capricious, unsupported by substantial evidence, or contrary to law. In response, the United States moved for summary judgment under RCFC 56, and, in the alternative, judgment on the administrative record under RCFC 52.1. (Def. Mot. at 1). In support of its motion for summary judgment, the United States argues Fuller's claim is barred by *res judicata* because it seeks the same relief and relies on the same transactional facts that were adjudicated in *Fuller v. United States*, 127 Fed Cl. 640 (2016). Specifically, the United States contends that, by failing to raise the issue his prior action, Fuller waived his argument that the Secretary of the Navy had exclusive authority to place Fuller on legal hold pending the investigation into his misconduct. (Def. Mot. at 13–16). Fuller counters that in his application for reconsideration, he presented new evidence to the BCNR and therefore his Complaint in this case is not based on the same set of transactional facts considered in *Fuller v. United States*. (Pl. Mot. at 25–29).

In its motion for judgment on the administrative record, the United States argues that the BCNR properly denied Fuller's request for reconsideration because the USMC acted properly in placing Fuller's retirement on legal hold and dropping him from the rolls. (Def. Mot. at 16). In response, Fuller asserts the legal hold was contrary to law because the Secretary of the Navy, rather than the Commandant, possessed the exclusive authority to hold his retirement in abeyance, and thus, the Board's decision to deny his request for reconsideration must be set aside. (Pl. Mot. at 19).

As explained below, the Court agrees with the United States that Fuller's claim is barred by *res judicata*. Both Fuller's 2015 claim and the complaint in this case rely on the same set of transactional facts— Fuller's placement on legal hold and subsequent drop from the USMC rolls. Fuller had a full and fair opportunity to litigate whether he was properly placed on legal hold in his previous action and failed to do so. Thus, his theory concerning the Secretary's exclusive authority was waived and his present claim is barred by the doctrine of *res judicata*. In light of this decision, there is no need to analyze the United States' alternative motion for judgment on the administrative record.

#### A. Res Judicata

The well-established doctrine of *res judicata* precludes collateral attack of a final judgment on the merits.[2] *Federated Dept. Stores, Inc. v. Moitie*, 452 U.S. 394, 398 (1981) ("A

---

[2] *Res judicata,* or "a matter [already] judged," encompasses two similar concepts: "issue preclusion" and "claim preclusion." Issue preclusion pertains to a matter that was actually litigated, while claim preclusion forecloses

final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action."). *Res judicata*, or claim preclusion, not only precludes relitigating the claims actually raised in the original actions, but also "any other admissible matter which might have been offered for that purpose." *Nevada v. United States*, 463 U.S. 110, 130 (1983) (internal quotations omitted). "Claim preclusion refers to the effect of a judgment in foreclosing litigation of a matter that never has been litigated, because of a determination that it should have been advanced in an earlier suit." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984). "The final 'judgment puts an end to the cause of action, which cannot again be brought into litigation between the parties upon any ground whatever.'" *Nevada*, 463 U.S. at 130 (quoting *Commissioner v. Sunnen*, 333 U.S. 591, 597 (1948)). "To preclude parties from contesting matters that they have had a full and fair opportunity to litigate protects their adversaries from the expense and vexation attending multiple lawsuits, conserves judicial resources, and fosters reliance on judicial action by minimizing the possibility of inconsistent decisions." *Montana v. United States*, 440 U.S. 147, 153–54 (1979).

"Claim preclusion applies when '(1) the parties are identical or in privity; (2) the first suit proceeded to a final judgment on the merits; and (3) the second claim is based on the same set of transactional facts as the first.'" *Phillips/May Corp. v. United States*, 524 F.3d 1264, 1268 (Fed. Cir. 2008) (quoting *Ammex, Inc. v. United States*, 334 F.3d 1052, 1055 (Fed.Cir.2003)). The parties agree that the first two elements are clearly met. (Def. Mot. at 13; Pl. Mot. at 25–26). However, the parties disagree over whether Fuller's Complaint in this suit is based on the same transactional facts as *Fuller v. United States*, 127 Fed. Cl. 64 (2016).

The inquiry into whether two claims involve the same transactional facts must be conducted "pragmatically, giving weight to such considerations as whether the facts are related in time, space, origin, or motivation, whether they form a convenient trial unit, and whether their treatment as a unit conforms to the parties' expectations or business understanding or usage." *Phillips/May Corp.*, 524 F.3d at 1271 (quoting Restatement (Second) Judgments § 24(2) (1982)). In other words, courts evaluate whether the "same nucleus of operative facts" are present in both claims. *See Ammex, Inc.*, 334 F.3d at 1056.

Here, Fuller filed his first complaint in the Court of Federal Claims in 2015, seeking review of the BCNR's decision denying relief. *Fuller*, 127 Fed. Cl. at 644. In that case, Fuller argued, *inter alia*, that because the USMC was working with civilian authorities to pursue criminal charges, no action was being taken with a view toward court-martial, and therefore, no valid legal basis existed for holding his retirement in abeyance. *See id*. at 645. In his Complaint, Fuller acknowledged the legal hold was initiated by the Commander of the USMC Central Command but failed to challenge the authority of the Commander to initiate this hold; instead, challenging only the basis for the hold (that it was action taken "with a view to a trial" by court-martial. *See* Complaint at ¶ 43, *Fuller*, 127 Fed. Cl. 640 (2016) (No. 15-418), ECF No. 1, ("2015

---

matters which should have been litigated but were not. *See Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 77 n.1 (1984).

8

Complaint"). In its decision, the Court examined various military regulations and rules for court martial to determine whether the legal hold was valid. *See id*. at 646. The Court concluded that "the Marine Corps properly maintained [Fuller] on legal hold and held [Fuller's] retirement action in abeyance through his incarceration and supervised release[.]" *Id*.

In his 2016 petition to the BCNR to reconsider its 2012 decision, Fuller raised for the first time the issue of who possessed authority to institute his legal hold, asserting "[t]he action taken by the Commander, U.S. Marine Forces Central Command of placing Major Fuller's mandatory retirement in abeyance . . . was in violation of federal law as well as binding Marine Corps Order and constituted an abuse of discretion." (AR32, 33). This argument rested on Fuller's interpretation of Marine Corps Order P1900.16 that "only the Secretary of the Navy has the authority to take such an action."[3] (AR33). The Board denied Fuller's request, expressly refuting Fuller's interpretation and concluding Fuller's "placement on legal hold and continuation of that hold beyond the date of [his] approved retirement was not erroneous or unjust." (AR3). The Board also noted Fuller's "present claims of error and injustice [were] superficially, and in part substantively, similar to the ones previously considered and denied by the Board." (AR4).

Following the Board's denial, Fuller brought his challenge to this Court. (*See* Compl. at ¶¶ 76–79). This Complaint relies on the same nucleus of operative facts to state a claim as the 2015 Complaint—Fuller's placement on legal hold and subsequent drop from the USMC rolls. Much of the Administrative Record filed in this case is duplicative of that filed in support of his 2015 Complaint. (*See, e.g.*, AR22–77). Fuller's new legal theory—the exclusive authority of the Secretary—is the only meaningful difference between the two suits. But the transactional facts approach forbids precisely this substitution of legal theories to circumvent a previous judgment. *See Anderson v. United States*, 46 Fed. Cl. 725, 730 (2000), *aff'd*, 4 F. App'x 871 (Fed. Cir. 2001); *see also Moitie*, 452 U.S. at 398; *Res. Investments, Inc. v. United States*, 785 F.3d 660, 667 (Fed. Cir. 2015); *Foster v. Hallco Mfg. Co.*, 947 F.2d 469, 479 (Fed. Cir. 1991).

According to his 2015 Complaint, Fuller acknowledged that it was the Commander of the USMC Central Command, not the Secretary of the Navy, that placed him on legal hold. Clearly, Fuller's present argument in this case is based on "factual issues [that] were available at the time plaintiff filed the prior action[.]" *See Anderson*, 46 Fed. Cl. at 730; *see also Vitaline Corp. v. Gen. Mills, Inc.*, 891 F.2d 273, 275 (Fed. Cir. 1989) (barring plaintiff's second claim where the facts and evidence used to establish that claim were available for plaintiff's use in the original proceeding). Despite having a full and fair opportunity to litigate the authority to place him on legal hold and thus suspend his retirement, Fuller failed to advance these arguments in the prior case, thereby waiving them. *See Res. Investments*, 785 F.3d at 667 ("Different legal theories do not create separate claims for res judicata purposes"); *see also Anderson*, 46 Fed. Cl. at 730

---

[3] MCO P1900.16 Ch. 2, Sec 2005, ¶ 6 states: "Only the Secretary of the Navy has the authority to hold a mandatory retirement in abeyance. Strict adherence to procedures outlined in Chapters 1 (medical) and 8 (disability) are crucial."

("[A]ltering the theory of recovery does not form a new claim under the transactional approach.").

Furthermore, repetitive requests for the same relief indicate that the subject cases are based on the same nucleus of operative fact. *See Keller v. United States*, 120 Fed. Cl. 218, 226 (2015). Fuller's Complaint in this case seeks the same relief he sought in his 2015 Complaint. *Compare* (Compl. at 11–12), *with* 2015 Complaint at 12–13. In each complaint, Fuller requests correction of his records, to be placed in honorable retired status, removal of adverse administrative action documents from his personnel file, and payment of accrued back pay, allowances, and benefits. (Compl. at 11); 2015 Complaint at 12–13; *see also Fuller*, 127 Fed. Cl. at 644 ("[Fuller] filed his complaint with this Court, requesting reinstatement of his retirement, deletion of negative entries from his record, and back pay."). Thus, the relief sought by Fuller in this case is further evidence his claim is based on the same set of transactional facts advanced in support of his 2015 Complaint. As a result, the Court finds Fuller's claim in this case is barred by the doctrine of *res judicata*. Therefore, the United States' Motion for Summary Judgment must be granted.

### B. Judgment on the Administrative Record

Because the Court finds Fuller's claim for relief in this action is precluded by his previous litigation in *Fuller v. United States*, there is no reason to separately consider the parties' motions for judgment on the administrative record. As such, the United States' Motion for Judgment on the Administrative Record and Fuller's Cross-Motion for Judgment on the Administrative Record are denied as moot.

### IV. Conclusion

For the reasons set forth above, the United States' Motion for Summary Judgment is hereby **GRANTED**. Consequently, the United States' Motion for Judgment on the Administrative Record and Fuller's Cross-Motion for Judgment on the Administrative Record are **DENIED AS MOOT**.

The clerk is directed to enter judgment accordingly.

**IT IS SO ORDERED.**

s/  David A. Tapp
DAVID A. TAPP, Judge